UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE GREEN,

    Plaintiff,

v.

A. MORSEY, ET. AL.,

    Defendant.
_____/

Case No. 15-12508

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [30]

Plaintiffs filed suit against Defendants on July 15, 2015 [1]. Defendants filed a Motion for Summary Judgment [30] on August 19, 2016. Plaintiffs responded on September 28, 2016 [37] and Defendants replied on October 11, 2016 [39]. A motion hearing was held on this pending motion on March 20, 2017. For the reasons stated below, Defendants' Motion for Summary Judgment [30] is **GRANTED IN PART** in regards to Plaintiff's state law claims and **DENIED IN PART** in relation to Plaintiff's §1983 claim.

### FACTUAL BACKGROUND

On January 30, 2013, Plaintiff was having electrical service restored to his house which lacked power. [37-2 at 25:11]. Plaintiff and his girlfriend, Chynna

White ("Chynna"), left the house to get something to eat while the DTE Power workers were restoring the electricity. [*Id* at 25:13-15]. While they were away, the DTE workers called to inform them that a group of men had stolen a package from Plaintiff's back stoop. [*Id* at 29:6-14].

After getting the call, Plaintiff and Chynna returned to the house, parked the car in the front, and proceeded to the back of the house. [*Id* at 32:13-20]. While they were walking, a group on men appeared leaving the back of the house. [*Id* at 32:19-22]. Plaintiff confronted the group and asked them to return whatever they had stolen. [*Id* at 32:22-23]. Plaintiff testified that his loaded glock .45 was in his hip-holster that night, covered by his shirt. [*Id* at 47-48:19-15]. Plaintiff saw the group of men were reaching and pulling up their pants and, threatened by those actions, he fired a warning shot. [*Id* at 34: 1-6].

Following the warning shot, the men ran and jumped into a van or truck and drove off. [*Id* at 33:8-13]. Once the men left, Plaintiff told Chynna to go into the house and call the police [*Id* at 33:13-14]. Detroit Police Department's Dispatch ("dispatch") received a call at 6:38:53 pm reporting a larceny at 17334 Salem Street. There was no mention of shots having been fired. [30-3]. At 7:32:39 pm, dispatch received a call, allegedly from Plaintiff's neighbor, which reported that someone who had threatened to shoot up her house, had subsequently fled the scene in a silver Impala. [30-3].

At 8:31:33 pm, dispatch received a call, which reported that a group of four men had come with guns. threatening to shoot up the place, and were standing in front of a brown Taurus parked at 17334 Salem. [30-5]. This information was relayed to Officers Moresy and Sowle, who were sent to the location on a shots fired run. [30-5]. Due to the nature of the calls relating to the address, and the potential for confrontation, Officers Lyons and Terechenok were called for back up. [30-6]. These officers were in the area investigating a report of a dark truck firing shots from an AK-47 out of their window. [30-6].

As Officers Sowle and Mosey approached the scene, they observed a group of men standing next to a brown Ford Taurus parked in front of 17344 Salem run to the rear of the premesis. [30-4]. Officer Sowle spoke with Plaintiff's neighbor at 17355 Salem Street. [30-4]. She indicated that her neighbor (Plaintiff) "had been outside flashing a gun that was in his waistband to her and visitors that were at the home shortly before (police arrived)," and that she had heard one shot fired. [30-4].

Officer Lyons testified that he knocked on the front door of 17334 Salem Street and a woman, who appeared to be visually upset and crying, appeared at the door. [37-4 at 11:1-2]. The door was a security door that the woman stated she could not open without the key, which was in possession of her boyfriend [30-4]. Officer Lyon also saw two men inside of the house. [37-4 at 11:20-23]. The woman indicated that she would open the back door for the officers.

Officer Lyons and Terechnok headed to the back door and, during this time, heard loud crashing inside the home, accompanied by crying and screaming. [30-4; 37-4 at 12:9-16]. Officer Lyons reached the back door and began knocking forcefully. [30-4]. Plaintiff testified the door was being kicked by the police, and that it was "jumping" when the officers arrived at the back door. [37-2 at 64:4-8]. Officer Lyons testified that the young woman opened the door [37-4 at 13:18], while Plaintiff stated that he opened the door [37-2 at 65:5].

Plaintiff testified that the police had their weapons drawn, and called for all people to exit the house and that four individuals and the young woman from the front door were inside the house, and detained for investigation while an officer entered the house to search. [37-2 at 65:16-22; 30-4]. Officers Lyons, Morsey and Sowle stated that they detained the individuals in the kitchen next to the door after they entered the house to do a protective sweep. [37-2 at 67:20].

It is unclear whether the people in the house were kept inside the house, or came outside, prior to being detained. It is also unclear who opened the back door. These are questions of fact that are material to the exigency and qualified immunity analysis, and therefore a possible material issue of fact remains disputed at this time, and summary judgment should not be granted on the claims that concern the legality of the warrantless search of the house.

During the protective sweep of the house, Officer Morsey's report indicates that he smelled a strong odor of marihuana inside the house [30-4]. During this sweep of the house, Defendants Morsey and Sowley went down the basement stairs from the kitchen and discovered thirty-eight marihuana plants under heat lamps in plain sight. [30-4]. Following the search, Officer Morsey asked who was the owner of the house at 17334 Salem. Plaintiff identified himself as the owner [30-4]. Plaintiff also admitted to shooting his gun, but clarified that he had a Concealed Pistol License card ("CPL"). *Id*. Plaintiff subsequently produced the card to Officer Morsey, who ran the number through LIEN and discovered that the license had been revoked. [30-8]. When questioned about his gun, Plaintiff stated that he did not have his weapon on his person [30-4]. Officer Morsey found a silver, five-shot revolver on Plaintiff's lawn with four live rounds. [30-9]. Based on the evidence and admissions by Plaintiff, he was issued a ticket for discharging a weapon within city limits. *Id*. A narcotics officer arrived on scene and assisted in seizure of the marihuana plants, the lights and ancillary equipment, since Plaintiff could possess no more than twelve live plants as a registered patient with a medical marihuana card. *Id*.

Plaintiff was taken to the Sixth Precinct and processed at 10:30pm. *Id*. He was released at 1:40pm on February 3, 2013, on a personal bond of $10,000. *Id*. He was charged with two counts in Wayne County, which included a charge of

controlled substance delivery manufacture of marihuana and a weapons felony firearm. [30-11]. At the preliminary examination hearing, the evidence was suppressed. Judge Bryant-Weekes found that: (1) insufficient testimony was presented to show exigent circumstances at 17334 Salem; and (2) there was no evidence presented to show Plaintiff owned the property in question.[1] Therefore, the drug charge was dismissed due to the suppression of evidence illegally seized from the home, and the felony firearm charge was dismissed because the underlying felony charge was no longer valid. [37-3]. Plaintiff alleges that his basement incurred damage to the ceiling following the search, and that his marihuana and cash was never returned.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable

---

[1] The testimony did not elicit or present the statement of ownership made to Officer Morsey by Plaintiff as reported by Officer Morsey on the night of arrest.

inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### 1. CROSS-OVER ESTOPPEL

Plaintiff argues that "cross-over estoppel" under Michigan law dictates a finding that the Defendants lacked probable cause. Therefore, Plaintiff argues, that the City of Detroit Criminal Division Judge's finding that there was no probable cause to enter Plaintiff's home is applicable in this case and Defendants should not be able to relitigate the issue in this case.

In a §1983 case, a Court must apply state law to determine whether a State Court's judicial decision has a preclusive effect. *Burda Bros., Inc. v. Walsh*, 22 F. App'x 423, 430 (6th Cir. 2001). Under Michigan law, collateral estoppel prevents relitigation of an issue in a subsequent case between the same parties or their privies when the earlier proceeding resulted in a final judgment, when the issue was actually litigated, and when it was necessary for the result. *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630–31 (1990). In order for an issue to be actually litigated, the party against whom estoppel is asserted must have had a full

and fair opportunity in the previous proceeding to litigate the issue. *Id*. Michigan law also fully embraces "cross-over estoppel," "where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa." *Id*.

Michigan courts have relaxed the mutuality standard for defensive use of collateral estoppel because the Plaintiff had an opportunity to litigate the issue in a prior proceeding. *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 690, 677 N.W.2d 843, 850 (2004). However, when used offensively, the Sixth Circuit has interpreted Michigan law to require mutuality, and declined efforts of Plaintiffs in the civil action to estop Defendants from relitigating an issue previously determined in a state court criminal proceeding. *See e.g. Burda Bros., Inc. v. Walsh*, 22 F. App'x 423, 430 (6th Cir. 2001). The Court has recognized that in §1983 cases, individual police officers are not in privity with the People for mutuality purposes in the prosecution from the criminal case, and therefore did not have the opportunity to litigate the issue in the state court criminal case. *Id*. Because they had no personal stake in the previous state case, police officers are not precluded from religitating any issues determined by the state court. Therefore, the issue of probable cause is not yet determined in this proceeding and Defendants are free to relitigate the issue in this case.

2. **§1983 FOURTH AMENDMENT CLAIM FOR UNLAWFUL SEARCH AND SEIZURE**

The Fourth Amendment requires that searches of a home be reasonable. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir.2003). A search of a home, absent a warrant, is "presumptively unreasonable unless the government proves otherwise. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006).

   a. **QUALIFIED IMMUNITY**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991), citations omitted. In the Sixth Circuit, Courts undertake a two-step inquiry: "(1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such "that a reasonable official would understand that what he is doing violates that right." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).

### i. WERE PLAINTIFF'S FOURTH AMENDMENT RIGHTS VIOLATED

Violation of a constitutional right depends on whether the defense can show that an exception to the warrant requirement applied since it is undisputed that the officers on the scene did not have a warrant that permitted them to enter Plaintiff's home. The Supreme Court has carved out exceptions to the warrant requirement, one of which is the exigent circumstances exception. *Id*. Under this exception, a warrantless entry to a home can be reasonable if the Government can prove that "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 402 (2006).

One situation that qualifies as an exigent circumstance is "the need to assist persons who are seriously injured or threatened with such injury." *Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 545 (6th Cir. 2013), citing *Brigham City, Utah*, 547 US at 403. Under this exception, officers may "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id*. "[I]ronclad proof of a likely serious, life-threatening injury is not required to invoke the emergency aid exception" but the "decision to enter must be based on more than a hunch or the mere possibility that someone inside needs immediate aid." *Id*, citations omitted. In reviewing whether the officers' actions were objectively justified, the Court

considers the "totality of the circumstances and the inherent necessities of the situation at the time." *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006).

Defendants argue that exigent circumstances justified the officers' actions and therefore this claim should be dismissed. Defendants cite to several Sixth Circuit cases to support a finding of exigency. However, all of these cases are easily distinguishable.

*Dickerson v. McClellan* concerned a dispatch call where nine shots were fired from *inside* a house and in which the shooter had not left the house yet. 101 F. 3d 1151 (6th Cir. 1996). As the Court in *Dickerson* pointed out, the fact that the man had fired his weapon nine times from inside his house provided more than a hunch that he was willing to use the weapon and possibly harm other people who were reasonably suspected to be inside the house. 101 F. 3d at 1160. This case concerns a *single* shot fired *outside* of the house that was reported. Additionally, as the officers in *Dickerson* approached the house, they heard a male voice yelling threateningly, smelled freshly burnt gunpowder, and heard a man yell "I've got something for your ass" and a cylinder close on a revolver. *Id* at 1154.

In this case, at best, the only sound that was heard was a distressed call from a female. However, per the facts presented by Plaintiff, the female and several other unknown males had all exited the house and were detained by the fence. It

was easily ascertainable at that time that the woman was safe, and therefore no exigent circumstances existed. Even under the Defendant's set of facts, once the female appeared at the door, they could easily talk to her and see she was not in danger, the exigency ceased to exist, absent any evidence that there was belief that there was another injured party remaining in the house. In fact, this was the very logic followed by the state court Judge who suppressed the evidence found in the house, based on the fact that there was no exigency because the police officers established that the woman in question was safe without having to enter the house.

In *Causey v. City of Bay County*, there were six shots fired from inside the house. 442 F.3d 524, 529 (6th Cir. 2006). When the police investigated, they found that a hangup call to 911 had been made, and that a return call made to 911 had explained a child had made the call. *Id* at 526. The neighbor told the police in *Causey* that she did not believe that a child was in the home. They found shell casings in the backyard, were told that a child had made the call, although no children were thought to be in the house. Based on that information, and a lack of response from the house, a warrantless entry into the home was found permissible to check for possible injured parties.

In this case, the single shot fired occurred outside the house, and the retreating group of men was not seen to have entered the house. Additionally, in

this case, there is at best a weak argument for a continuing exigent circumstance since there are no additional facts or investigation that took place. In *Causey,* the officer on the scene questioned the neighbor twice, and followed up on information regarding a hangup 911 call. In this case, other than the initial knock and discussion with Chynna at the front door, there was no additional investigation or questioning before entry into the house. There is also a weak argument for continuing exigency since the police only testify to worrying about the welfare of the woman, Chynna, who in both Plaintiff and Defendant's versions of the story, was plainly not injured. The officers had opportunity to continue questioning, or to obtain a warrant to continue the investigation through entry of the house.

While Defendants argue that *Causey* supports a finding of exigency because that case found that the difference between nine shots or six shots did not undermine a finding of exigency, one shot is vastly different from six shots in succession, and, given the totality of the circumstances facing the officers that night, a warrantless entry into the house violated Plaintiff's Fourth Amendment rights. *Id* at 530.

Finally, Defendants argue that *United States v. Hoffman* supports a finding of exigency because, like *Hoffman,* the Defendants confirmed the 911 call of shots fired with the witnessing caller. 461 F. 3d 777, 782 (6th Cir. 2006). However, the

fact remains that, considering the totality of the circumstances based on the facts presented, there does not appear to be a valid case of exigent circumstances. The Defendants in this case appear to have relied on no more than a hunch that there existed additional possibly harmed parties within the house, despite seeing that the woman, whom they feared was harmed, appeared uninjured before them. A mere hunch is never enough to sustain a valid exigent circumstance defense to a warrantless search, especially of a suspect's home. *Brigham City, Utah*, 547 US at 403. Therefore, the Court finds that the Fourth Amendment rights of Plaintiff were violated by the warrantless search of his residence.

### ii. COULD ANY REASONABLE OFFICER BELIEVE THE SEARCH WAS AND SEIZURE WAS LAWFUL?

Defendants argue that qualified immunity should apply in this case, citing *O'Brien v. City of Grand Rapids*, 23 F. 3d 990 (6th Cir. 1994). However, that case is easily distinguishable since the suspect initially came to door with gun in hand, barricaded himself in the home, had previously shot and wounded a citizen in the front yard of the very house in which he was barricaded, had a history of violence and associated mental problems, and had caused the neighborhood to be evacuated. *Id* at 999-1000. That case clearly presents a vastly different set of circumstances than the one currently before the Court.

Viewing the facts in the light most favorable to the non-moving party, the Plaintiff and all present in the house were detained outside of the house before the Defendants conducted a "protective" search. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Per the Plaintiff's account, all those inside the house had willingly exited the premises and were detained in the backyard prior to the Defendants entering the house. A reasonable officer would likely understand that searching a house without a warrant at that point would violate the Fourth Amendment as they had the opportunity to speak with the members of the house who were detained next to the fence to investigate whether there were any other people present in the house. The sole person the Defendants continuously identified as the person whose welfare was at risk, the female occupant of the house, was outside and clearly unharmed. Without any evidence presented to suggest that the officers had any concern about other people inside the house, that Defendants do not have qualified immunity on this charge.

Additionally, there is a genuine dispute as to material facts regarding this claim. Plaintiff's attorney stated that there were disputes regarding material facts at the oral argument and in her response brief. Plaintiff claims that himself, Chynna, and the men inside of Plaintiff's house were detained and questioned outside of the house before the police officers entered the house to search. Defendants state that

the people were detained and questioned inside the house in the kitchen after Defendants entered the house to ensure the safety of all those inside. Plaintiff testified that he opened the door for the police, while Defendants state that Chynna opened the door. Given the disagreement on these material facts, Defendants are not entitled to summary judgment. Fed. R. Civ. P. 56(a).

### A. PLAINTIFF'S STATE LAW CLAIMS

The Court has original jurisdiction over Plaintiff's §1983 claim. Plaintiff also brings state law claims of false arrest, false imprisonment, malicious prosecution and trespass before the Court over which the Court could exercise supplemental jurisdiction. 28 U.S.C. §1367. Supplemental jurisdiction "need not be exercised in every case in which it is found to exist" and rather the Court should consider "judicial economy, convenience and fairness to litigants" when determining whether to dismiss state claims or not. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id*.

In this case, Plaintiff's attorney could not offer any persuasive arguments as to why the state-law claims should remain in this Court. Because an exercise of supplemental jurisdiction will not serve to promote judicial economy, fairness to the parties or convenience, Plaintiff's claims of false arrest, false imprisonment,

malicious prosecution and trespass are dismissed without prejudice. Plaintiff may raise these claims in state court if he so wishes and take advantage of the state court's expertise on these matters.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** as to the §1983 claim.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims of false arrest, false imprisonment, malicious prosecution and trespass. These claims are **DISMISSED without prejudice.**

**SO ORDERED**.

                                            s/Arthur J. Tarnow
                                            Arthur J. Tarnow
Dated: March 27, 2017          Senior United States District Judge